163872 Arif Majid v. Jeff Noble. Arguments not to exceed 15 minutes per side. Mr. Calabrese for the appellant. Good morning. May it please the court, my name is Phil Calabrese from Porter Wright, representing the petitioner appellant Arif Majid. I'd like to reserve four minutes for rebuttal if I may. All right. Thank you. The court has read the party's briefs and is familiar with the record, so before the panel retires to deliberate on this case, I really wanted to just offer in the argument this morning two clarifications about petitioner's arguments. The first is that I wanted to address the standard of review and petitioner's argument against the standard of review, because sometimes I feel like in habeas cases in particular that often gets lost in the briefing. So let me start there. Here, the parties agree that for a claim of prosecutorial misconduct, the standard is whether within the context of the trial as a whole, on the record as a whole, the prosecutor engaged in misconduct. And here there's broad agreement among the courts that have reviewed this case thus far that the prosecutor engaged in improper conduct. So the question really then shifts to the harmless error question. And the Supreme Court recently reminded us in Ayala v. Davis that on direct appeal, the harmlessness standard is the standard set forth in Chapman. Can I ask a question about your contention on the prosecutorial misconduct? When a prosecutor says something he shouldn't have, that does not necessarily under applicable standards always arise to something that can be categorized as prosecutorial misconduct. Is that correct? I agree with you on that, Your Honor. And for whatever reason, the test for whether it is or isn't often sort of bleeds into whether there is indeed harmless error because you're looking at the impact on the overall trial. Do you think that's right? I certainly cannot speak to that over the run of cases that you and the Court see. What I can say is in my interpretation, I believe that that's what this circuit's flagrancy test really gets into, is to try to isolate the comments from the error and whether the error is harmless or not. Here what I would say on the record is the courts, including the State Court of Appeals, the magistrate judge, and the district court all agreed that the comments we're talking about are improper. Indeed, I mean, they spanned, I guess just under the flagrancy test that this court uses, they were not isolated comments. You can certainly take them either individually, item by item, whether you look at the testimony of Franklin or the questions to Franklin, the testimony to Whitsett, who was the first witness on the stand. You can look at the rebuttal argument that the prosecutor left the jury with when it retired to deliberate. But there's more on this record, and to use the district court's words, of a piece with what the prosecutor did in each of those instances. The prosecutor's comments and improper questioning and argument based on Mr. Majeed's religion started in Voidere when he asked witnesses, potential jurors, about their memories of September 11th. Then it continued in opening statement. There were seven fact witnesses who testified at this trial over the course of more than a week, and out of those seven fact witnesses, he asked each one of them about the Islamic meaning of the tattoos. On five of them, there was extensive time spent questioning them about the meaning of terms like jihad and mujahid, etc. It culminated with Franklin, the last witness at the end of the first week, when he went so far as to ask Franklin his interpretation of phrases like, which I can't even pronounce, I apologize, peace be unto you, to contrast the way Franklin practiced his religion as a non-observant Muslim with the way Franklin, in the prosecutor's characterization, a jihadi did, all in a case where religion was not at issue indisputably. What are we to do with the defense lawyer's emphasis on the defendant's religion? In a way, his actions make the case harder for you. I would disagree, Your Honor, and I think you need to look at two different aspects of that. First, with respect to the witness conduct and examination, the defense lawyer did not do anything that can be said to open the door on those items. These were prosecution witnesses, and the prosecution elicited that testimony and made those arguments through the direct testimony without any prompting from defense counsel. Indeed, the voidir questioning was raised, and the opening statement based on religion and jihad was raised by the prosecutor as the first person to speak at the trial. Your question really, I think, goes to the rebuttal argument, and that's the argument that the respondent has made, is that the defense lawyer opened the door, and I would respectfully disagree with that. I didn't really mean it in terms of opening the door. That's not a theory that appeals to me particularly. I do think that when you look at the trial overall, you have to consider the impact the evidence may have had given the defense arguments. No, and that's fair, Your Honor, and I agree. In fact, the next thing I was going to say is when you look at this under the prosecutorial misconduct standard, which looks at the evidence and the record as a whole, in that context, the defense lawyer in this case is responding to the record as a whole, because by the time he stands up to do his closing argument, the jury has heard for over a week, I believe it was about seven or eight days of trial at that point, a relentless focus on religion and portraying the defendant as acting out a belief of jihad in a case where it had nothing to do with it. In the context of the entirety of the record as well, I think it's important to remember that the key issue in dispute at the trial, there was no dispute, was the identity of the shooter who killed Jerome Thomas. On that point, Mr. Majeed has always maintained that he was not the shooter, and there was disputed evidence at trial from which a finder of fact could conclude that he was, in fact, not the shooter. But isn't that what made the tattoos somewhat relevant, identifying the shooter? That's the argument, Your Honor, and I would respectfully suggest that the record does not support that in this case. There's not one witness who testified at trial that the shooter had jihad tattoos or tattoos that had anything to do with Islam, not one. There's one witness who testified at trial that the shooter who had his arm through the door of the bar had tattoos on his arm. They were not tied to Islam, and they're not the jihad tattoo that's really been the focus of the record. That witness was Witset, and he focused on the arm, not the back, which are really the tattoos at issue. Wasn't all this argued at the trial as the identification issue and identification in relation to the tattoos, and then that was reviewed by the state appellate courts and disposed of for better or worse? Yes and no, Your Honor. The point, and I'm not being critical, but the point I was trying to get to before we started getting into questions, which I prefer, is that when the state trial court performed a Chapman analysis on direct appeal, it did not actually look at the Chapman standard with respect to any of these errors, and it really considered the errors in isolation, not under the prosecutorial misconduct standard of the record as a whole. In that regard- Are you referring to the trial judge or the state courts of appeal? The state courts of appeal, Your Honor. And in that regard, what I would say is that the point of these questions at trial under the flagrancy test, to go back to Judge Gibbons' question, really was to mislead the jury because the focus was on these tattoos as opposed to the disputed identification issue, and that's why we know under the Brecht standard that this error was not harmless because ultimately the jury told us that the error is not harmless. The jury came back during deliberations and asked two questions, both of which went to the identity of the shooter, and instead of answering that information and providing the statement, for example, of Morris Sickles to the police, which said that the person who knocked out the window was the shooter, but the DNA conclusively establishes that that was not the defendant, by instead of providing that statement, the trial judge instructed the jury, you should rely on your memories. Well, at that point, the memory is what the prosecutor said in rebuttal, which is the theme that pervaded the entire trial. Didn't Whitsitt at least identify your client as being the individual with the jihad tattoo and being the individual who was the shooter? The others may have referred to tattoos or referred to the dance floor, but didn't at least one witness identify him partly based on the tattoo? The witnesses, when you read the testimony, the witnesses identify him as having been at the scene that night based on the tattoos, including the jihad tattoo, but there's no witness who said that the shooter was the guy with the tattoo. What about Whitsitt, is this untrue? Whitsitt recognized the shooter as the guy with jihad on his back and identified Majid in court as the shooter. I believe you're, just so I'm clear, Your Honor, reading from the State Appellate Court transcript. No, I'm actually reading from my law clerk's pitch memo for full disclosure. She does have a record site, however. Based on past performance, I would generally tend to believe the accuracy. Well, I'm happy to look at the record site and then address it in rebuttal, but my review of Whitsitt's testimony, both at the time that the briefing was done and in preparation for the argument, was he never was that direct and express. But if you have a page ID site, I will look at that. I don't want to prolong you, but what I have is 1647 and 1676-77. Okay, I'll look at that and address it in rebuttal. Thank you. May it please the Court, my name is Mary Ann Reese and I represent Thurston. Did you try the case? I did not. No, I'm here only on habeas. I did not handle it at the state court level. You know, regardless of whether I agree or disagree with counsel, what prompts your office to continually use the term jihad in this case? You've got a pretty good case without knocking it over and over again, it seems. Your Honor, jihad was a unique identifier and it was one of the ways that two of the witnesses identified the shooter. Four eyewitnesses noticed the tattoos and then for two of them the term. I think that could very easily explain why a prosecutor might want to emphasize the distinctive nature of the tattoos as a means of demonstrating to the jury that the accuracy of the witness's memory because of the tattoo's distinctive nature. All that other stuff, I can't figure out what justification there could possibly be for that. Your Honor, the unique identifier part is the important part, who remembered what and why they remembered it. And again, for at least two of these witnesses, the terms had meaning. So if it was some French term you'd never heard of, it would not have and you wouldn't be able to identify the person. You would just say there was gibberish on his back. But they recognized the word jihad because it had big letters in their background. That would have been the office that tried the case. Excuse me? Your office would not have tried the case. No, that would have been the Cuyahoga County Prosecutor's Office, Your Honor. And a few things in response here. First of all, the standard of review. The Court is well familiar with the standard review on habeas cases. The Ohio Court of Appeals rejected every one of these claims. There are only four claims here, and those are the ones in the Certificate of Appealability. Although Mr. Majeed wants to expand the Court's review to all these other instances of everything they are talking about in their brief and in their argument, we're really only here on four claims. And the Ohio Court of Appeals rejected them. The question is whether that rejection, on the merits, was an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts of record. It was neither. And furthermore, the factual findings of the Ohio Court of Appeals here are binding, absent clear and convincing evidence the other way. And these are prosecutorial misconduct claims. The standard is Darden, the Darden due process standard. Under this standard, prosecutorial conduct reaches the level of a federal constitutional violation only if it is substantial and injurious, infecting the entire trial with unfairness, so as to make the resulting conviction a denial of due process. Now, as to the four claims, the first claim was concerning Rayshon Whitsitt. It was based on one question. The prosecutor asked, being in the military, did jihad have any significance for you? Defense counsel objected. The question was never answered. It was not asked again. And, again, in light of the entire record, which is Darden says we look at, this is one question, it's not substantial, injurious, infecting the entire trial. And also we would say that the Ohio Court of Appeals, Mr. Majeed raised that claim in his brief. The Ohio Court of Appeals did not directly address it. However, it's a silent denial under Harrington v. Richter, Renico v. Lett, Ross v. Panetta. The second claim is a set of questions put to Franklin III. And some are about his own practice of and experience of Islam. And these questions were not objected to. The only two questions objected to were when he was asked about mujahid and jihad. And he did answer those questions. One objection was overruled. The second about jihad was sustained. Franklin offered a balanced religious definition of each. He talked about how each was sometimes misconstrued to mean warlike. And then asked whether the tattoos had any particular meaning for Franklin. Franklin said, yes, they did. They were Islamic terms, Arabic terms. And again, the prosecutor went immediately into noting with Franklin that the events of that evening were not about religion. And several factors support the court's reversal of that claim. Again, most of the questions not objected to. In the scope of the entire record of 1,300 pages and some 20-plus witnesses, these were two questions. They are unique identifiers of mujahid, as we've said. And the judge at the start of trial gave jury instructions, general instructions, about questions to which there is an objection. And if that objection is sustained, the jury is not to consider it. And the judge further told the jury at least twice to make decisions based on the evidence and not on passion, sympathy, or prejudice. His final prosecutorial misconduct claim is about the arguments. The final argument, and that was, again, we're here under the Darden standard.  And the prosecutor's immediate follow-up comments after the argument complained of is, and what's the point here? This isn't about similar face identification. This is about unique trait identification. This is not religious prejudice. This is about who did what, who fired the shots. Again, unique identifiers. And the court several times gave the jury instructions that argument and what statements of counsel are not evidence, and the jury is to decide based on evidence. And, again, not to be influenced by sympathy, prejudice, or passion. And we do think the prosecutor's argument is in the nature of an invited response, United States v. Young, and that it even balanced the scales. It kept going back and forth. Throughout the trial, but the prosecutor's initial argument didn't go into jihad very much. But then the defense went on and on about the guy with the jihad tattoos, and that's what this is about. At that point, the prosecutor responded. And, finally, in light of Darden, the argument in Darden is a whole lot more inflammatory than the one here. And the U.S. Supreme Court found that the Darden argument was not a violation of due process. As to Mr. Majeed's comment in brief about that the death of Osama bin Laden had taken place on the night before final arguments, this is not in the record anywhere. Not in the trial record.  It's not before the district court. So I think it's improperly before this court. And the Supreme Court has said in Cullen v. Penholster that if a claim has been adjudicated on the merits by a state court, the federal court's review is limited to the record that was before the state court. That's not in the record. It was not before the court below. And, finally, the fourth claim. And the fourth claim is whether the testimony of Franklin III was so irrelevant and so prejudicial that it denied him a fair trial. And what we have argued there is that, and what we're arguing here, generally state court evidentiary rulings do not rise to the level of due process violations. And this one doesn't either. In order to rise to that level, the violation must offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. If anything, I mean, the Ohio Court of Appeals rejected it for an abuse of discretion. It's a state court ruling. It's not even cognizable in habeas as a state court ruling. And as a state court ruling, it would be binding on the habeas court. May I have a moment? In conclusion, there were four eyewitnesses, five if you count Paulette Shelton, who identified Majeed as the shooter here. So the strength of the overall record, the overall record is strong. The case is strong against Mr. Majeed. The standard is clear. This is not an unreasonable application of United States Supreme Court precedent. This is not an unreasonable determination of the facts of record. So we would ask this court to affirm the judgment of the district court denying the habeas petition. If the court has no other questions, thank you. Thank you. So briefly, two points in rebuttal. The first is with respect to the Brecht standard, which subsumes the 2254 statutory standards. Here, the unfairness of the prosecutor's misconduct that rendered the whole trial fundamentally unfair, so as to deny Mr. Majeed his due process rights to a fair trial, was the fact that based on the totality of the evidence before the jury, culminating in the rebuttal argument, the prosecutor invited the jury, in his words, to convict the defendant because he was a dangerous Islamic warrior on the morning after the death of Osama bin Laden was announced. But he went further than that in that rebuttal argument as well. You're not saying he said that. He said dangerous Islamic warrior. He said at one point in big question. He didn't say convict the man because he was an Islamic, a dangerous Islamic. He said Mr. Majeed, through his tattoos, was sending the message that he was dangerous. And he said that he called Mr. Majeed an Islamic warrior. That was his rebuttal argument. That is improper, and it's fundamentally unfair. It renders the entire trial fundamentally unfair on the morning after the number one terrorist in the world who has attacked United States soil on multiple occasions. His death is announced by the President of the United States on national TV. But the prosecutor went further even than that, and this has been, I think, lost a little bit on this record because the prosecutor also told the jury in his rebuttal argument that it's unfortunate, he used the term unfortunate, that the state does not have the power to waterboard witnesses. The ties between terrorism, which has nothing to do with this case, the ties between radical Islam, which has nothing to do with this case, were injected in the trial from opening statements even before that in Voidir all the way through those statements, and the jury has told us that that was prejudicial. The jury came back and asked questions that go to who the identity of the shooter was, which respondent acknowledges is the key issue in the case. Instead of focusing on the statement of Morris Sickles, which was in evidence before the jury, and they asked to review that the shooter was the person who broke the window and the evidence at trial was undisputed from the state crime lab, that that DNA unquestionably clears the defendant, they were focusing on those themes. The other point I just want to deal with briefly is the unique identifier point, and Judge Gibbons, this goes to your question, and I'm just going to look at one of these briefly. On page ID 1647, what you see is that it was not Witset who testified that the jihad tattoo person was the shooter. That was the leading question from the prosecutor on direct. Now, I agree, it's not an evidentiary matter whether that's proper or improper, and that's not my point. My point is that this is emblematic of what you see throughout this trial. To the extent there is any testimony on direct, it's coming from- It wasn't answered in the affirmative? The question was, so the person that you saw pass by you without a shirt, with jihad on his shoulder blades, is doing what outside the window? Answer, shooting rounds inside the bar. So the tie between the tattoo and the shooting comes from the prosecutor. And the question is not evidence, but Witset's answer does indicate that he is affirming the truth of the question. And, I mean, you know, if you're the defense lawyer, you object to stuff like that. I mean- I agree with you on that point, and the defense lawyer did object. The state trial court was not enforcing that ruling at that point. But my time has expired, so I just want to point out, though, in closing, that the error on that is not harmless. Again, because the jury told us, and rather than focusing on the dispute of fact, whether that person was the shooter or, as the other evidence suggested, it was someone with braids or the person who put their arm through the door, what the jury was left with was Mr. Majeed is a dangerous Islamic warrior. Thank you. Thank you. The case is submitted.